UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION
CRIMINAL CASE NO. 06-34-S-DCR

Eastern District of Kentucky
FILED
JUL 0 6 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES OF AMERICA                                    PLAINTIFF

VS.                    **REPORT AND RECOMMENDATION**

GEORGE PATRICK                                              DEFENDANT

\*\*\*\*\*\*\*

This matter is before the Court upon the "Motion to Suppress" (DE#28), by the defendant George Patrick. An evidentiary hearing was held on July 5, 2006. Having carefully considered the record, including the Motion (DE#28), Response (DE#33), and the evidence and witness testimony at the hearing, the Magistrate Judge makes the following proposed finding of facts and conclusions of law:

**I. Finding of Facts**

The following facts are taken from the briefs, as well as the evidence and testimony at the evidentiary hearing on July 5, 2006, at which both KSP Trooper George Howard and ATF Agent Tom Chittum testified.

On the evening of April 21, 2006, Trooper Howard was on duty patrolling in his cruiser. The police post notified Trooper Howard about a complaint that a male subject was firing his gun in the air on Long Branch Road in Bell County, Kentucky. The complaint referred to Patrick by name and further indicated the general location where Patrick was firing the gun. Trooper Howard drove there, shined his spotlight, and, from the road, saw the suspect partially hidden behind a tree. Trooper Howard testified that the suspect was at the location reported in the complaint and was wearing a jacket that matched the description given. There was a small stream just past the tree. Trooper Howard repeatedly told Patrick to "show his hands" but Patrick continually refused to do so. The officer finally drew his weapon and again ordered Patrick to "show his hands". Again, Patrick refused.

Trooper Howard advised the police post of the situation and asked for back-up. Meanwhile, Trooper Howard observed Patrick throw something on the ground

1

and then walk across the paved road. Patrick went over the fence that enclosed the yard of his house and finally "showed his hands" to the officer. Deputy Jeff Knuckles arrived to assist, and the officers approached Patrick. Trooper Howard testified that Patrick had "glassy eyes" and "slurred speech". The officers then administered various sobriety tests, including the one-legged stand. Patrick failed the tests. Trooper Howard testified that Patrick was cursing, acting belligerent and refusing to cooperate. Trooper Howard arrested Patrick and charged him with public intoxication.

The officers then looked on the ground around the tree where Patrick had dropped an object. After a few minutes of looking in the dark, Deputy Knuckles found a loaded Colt .45 semi-automatic firearm with the safety off and the hammer pulled back. He put on gloves, picked up the gun, and put it in an evidence bag. The officers did not observe anyone else there. Trooper Howard testified that he had never been on that paved road before, believed that Long Branch Road was a public road, and did not see any "no trespassing signs" or gates that might have excluded people from the roadway. Patrick was subsequently charged with a state charge of "felon in possession of a firearm" and was read his Miranda rights.

When Patrick arrived on April 25, 2006 for his court appearance on these state charges, federal agents arrested Patrick on a federal charge of being a felon in possession of a firearm and read him his Miranda rights. Patrick signed a waiver of such rights. On the same date, law enforcement officers executed a state search of Patrick's residence on Long Branch Road and confiscated a firearm, body armor, and ammunition.

At the hearing, ATF Agent Tom Chittum testified that after Patrick was arrested, the next day he drove up the same road in a vehicle to photograph the scene in the daytime. He testified that it was a rural area, but that the dead-end road had homes on both sides of the road. He said it appears to be an ordinary road and that Patrick's residence is not the last home on the road. This is clearly shown in the photograph marked Exhibit #3.

## II. Issues Presented

The defendant argues that his initial arrest "was illegal and as the search of his property was warrantless, illegal, and tainted by the illegal seizure, all evidence seized and obtained due to this illegal seizure and search must be suppressed". DE#28, p. 3. The defendant essentially argues that he was improperly arrested for "public intoxication" because he was on his own real property at the time. He

2

argues that he owns the land on both sides of the road (up to the stream) and that the road is part of his easement. He concludes that the evidence of the firearm allegedly possessed by him during that incident should be suppressed, and that all other subsequently-acquired evidence should also be suppressed as "fruit of the poisoned tree" under *Wong Sun v. United States*, 371 U.S. 471, 485, 835 S.Ct. 407, 9 L.Ed.2d 441 (1963).

### III. Conclusions of Law

A person's right to be free from unreasonable searches and seizures arises from the Fourth Amendment to the United States Constitution, which specifically provides:

> "The right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Patrick argues that the officers improperly seized him by arresting him for public intoxication when he was actually on his own real property and therefore not in "public". At the evidentiary hearing, defense counsel furnished a deed[1] to the defendant's real property on Long Branch Road in Arjay, Kentucky. Def. Exh. 1. He points out that K.R.S. §525.100[2] prohibits intoxication only in public places:

> "A person is guilty of public intoxication when he appears in a public place manifestly under the influence of a controlled substance, or other intoxicating substance, excluding alcohol (unless the alcohol is present in

---

[1] The deed, dated May 31, 2002, is a deed from the defendant to his wife. Although an easement is referenced therein, the location of the easement is not described in the deed. The easement's location may well be entirely in a location unrelated to Long Branch Road. At any rate, an officer on an emergency call would have no knowledge of the easement, and could assume, as did Trooper Howard, that Long Branch Road is a county or public road.

[2] The correct charge would appear to be alcohol intoxication under K.R.S. §222.202, which is also an arrestable offense under K.R.S. §222.203(1).

3

combination with any of the above), not therapeutically administered, to the degree that he may endanger himself or other persons or property, or unreasonably annoy persons in his vicinity."

"[I]t is well established that any arrest without probable cause violates the Fourth Amendment." *Crockett v. Cumberland College,* 316 F.3d 571, 580 (6th Cir. 2003). Probable cause is defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Graham,* 275 F.3d 490, 509 (6th Cir. 2001); *United States v. Bennett,* 905 F.2d 931, 934 (6th Cir. 1990).

The "facts and circumstances within the officer's knowledge [must be] sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." *Crockett,* 316 F.3d at 580, citing *Michigan v. DeFillippo,* 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). Probable cause for arrest is assessed under a reasonableness standard based on "an examination of all facts and circumstances within an officer's knowledge at the time of an arrest." *Crockett,* 316 F.3d at 580; *Thacker v. City of Columbus,* 328 F.3d 244 (6th Cir. 2003).

In order to determine whether Patrick's arrest was supported by probable cause, the Court must determine whether "at that moment the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that [Patrick] had committed...an offense." *Beck v. Ohio,* 379 U.S. 89, 91 (1964). Thus, the Court must "examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amounted to probable cause." *Maryland v. Pringle,* 540 U.S. 366, 371 (2003), quoting *Ornelas v. United States,* 517 U.S. 690, 696 (1966).

Here, the officers had received a report from the Kentucky State Police post dispatcher that, in the late evening hours, a named individual (the defendant, George Patrick), was firing his gun in the air in an inhabited area on Long Branch Road. Upon arrival, Trooper Howard observed an individual matching the description, who then refused the officer's directions to show his hands. "When an individual responds to the approach of identified law enforcement with 'deliberate furtive actions', the furtive actions when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime....are proper factors

4

to be considered in the decision to make an arrest." *Sibron v. New York*, 392 U.S. 40, 66-67 (1968). Coupling these facts with the observations made by the officer of the defendant throwing down an object (a pistol), as well as his personal appearance, and the failing of sobriety tests after he had crossed the roadway, the arrest was proper.

In the present case, Officer Patrick certainly had sufficient facts to believe that Patrick had committed, was committing, or was about to commit an offense. Trooper Howard had sufficient probable cause to arrest Patrick for public intoxication. After responding to a complaint about Patrick firing a gun in the neighborhood late at night, Trooper Howard had arrived at the scene on Long Branch Road and asked Patrick to "show his hands". However Patrick remained behind a tree and repeatedly refused to comply. Trooper Howard had then observed Patrick cross Long Branch Road and go over the fence into the yard of a residence. Trooper Howard reasonably believed Long Branch Road was a public or county road, and personally observed that Patrick appeared to be impaired and under the influence of some substance because he had "glassy eyes" and was slurring his speech. Patrick's arrest for public intoxication after being observed on Long Branch Road under these circumstances did not violate the Fourth Amendment. The fact that Patrick owns real property there and has an easement for access to his property does not establish that Long Branch Road is a private roadway, rather than a public road.

At any rate, the officer was justified in responding to the dispatcher's call and determining under "the facts available to him at the time" that criminal activity was afoot. See *Docksteader v. Commonwealth*, Ky. App., 802 S.W. 2d 149, 150 (1991). Given that the arrest was supported by probable cause, suppression of the Colt .45 firearm subsequently discovered on the ground near the tree across the street is not warranted as "fruit of the poisoned tree" under *Wong Sun v. United States*, 371 U.S. 471, 485 (1963). Regardless of the ultimate disposition of the public intoxication charge, the officer did nothing that would require suppression here. "The Fourth Amendment does not require that a police officer *know* a crime occurred at the time the officer arrests or searches a suspect...The Fourth Amendment, after all, necessitates an inquiry into probabilities, not certainty." *Thacker*, 328 F.3d at 256, citing *United States v. Strickland*, 144 F.3d 412, 415 (6th Cir. 1998). The purpose of the exclusionary rule is to deter police misconduct. Here, there is no police misconduct to deter.

To the extent Patrick also argues that the officer could not search across the road by the tree for the object he had seen Patrick drop from his hand, the United

5

States Supreme Court explained in *Oliver v. United States*, 466 U.S. 170, 171, 104 S.Ct. 1735, 1738 (1984) that the fact that an officer's intrusion upon an open field may be a trespass at common law does not make it a "search" in the constitutional sense. In the case of open fields, the general rights of property protected by the common law of trespass have little or no relevance to the applicability of the Fourth Amendment. *Id.* at 1743-1744.

Although the defendant argues that the officers violated his Fourth Amendment right against "unreasonable searches" by entering upon his real property without a search warrant, the United States Supreme Court has indicated that the common law of trespass does not control for purposes of Fourth Amendment analysis. *Oliver*, 466 U.S. at 183, 104 S.Ct. at 1744 ("Nor is the government's intrusion upon an open field a 'search' in the constitutional sense because that intrusion is a trespass at common law"). A defendant has no legitimate expectation of privacy in an "open field", as that term is understood in Supreme Court precedent. *Id.*, 466 U.S. at 178, 104 S.Ct. 1741. The Supreme Court has explained that:

> "There is no societal interest in protecting the privacy of those activities, such as the cultivation of crops, that occur in open fields. Moreover, as a practical matter these lands usually are accessible to the public and the police in ways that a home, an office, or commercial structure would not be. It is not generally true that fences or 'No Trespassing' signs effectively bar the public from viewing open fields in rural areas. And both petitioner Oliver and respondent Thornton concede that the public and police lawfully may survey lands from the air. For these reasons, the asserted expectation of privacy in open fields is not an expectation that 'society recognizes as reasonable'." *Oliver*, 466 U.S. at 179, 104 S.Ct. at 1741-1742.

The officers' observation of the gun on the ground in the open is quite different from alleged intrusion into the interior of a home or other places where a defendant clearly has a legitimate expectation of privacy protected by the Fourth Amendment. See *United States v. Dunn*, 480 U.S. 294, 301, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987)(discussing expectation of privacy in an area immediately around a home); *United States v. Jenkins*, 124 F.3d 768, 773 (6th Cir. 1997) (discussing curtilage of home). Trooper Howard found the gun outside the fenced yard of Patrick's residence across the road. Hence, the gun was not even in the curtilage of the home. Patrick has not shown any legitimate privacy interest in the

6

open area around a tree across the road from his residence, and has not shown any violation of the Fourth Amendment that would warrant suppression of any evidence on such basis. Patrick has not shown an illegal seizure of his person, nor an illegal search of his property. Accordingly,

## RECOMMENDATION

It is **RECOMMENDED** that the "Motion to Suppress" (DE#28) by the defendant be **DENIED**.

By the express agreement of the parties, particularized objections to this Report and Recommendation must be filed within three (3) days of the date of service of the same or further appeal is waived. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *affirmed*, 474 U.S. 140 (1985). Poorly drafted objections, general objections or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. See *Howard v. Secretary of Health and Human Services*, 932 F.2d 505 (6th Cir. 1991). Also by agreement, a party may file a response to another party's objection within three (3) days after being served with a copy thereof. Rule 72(b), Fed. R.Civ.P.

This the 6th day of July, 2006.



Signed By:
J. B. Johnson, Jr.
United States Magistrate Judge