UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION
CRIMINAL CASE NO. 04-34-S-DCR

Eastern District of Kentucky
FILED
JUL 1 3 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES OF AMERICA            PLAINTIFF

VS.          **REPORT AND RECOMMENDATION**

GEORGE PATRICK            DEFENDANT

*******

This matter is before the Court upon the "Motion to Suppress" (DE#27), by the defendant George Patrick. An evidentiary hearing was held on July 10, 2006. Having carefully considered the record, including the Motion (DE#27), Response (DE#34), and the evidence and testimony at the hearing, the Magistrate Judge makes the following proposed finding of facts and conclusions of law:

## I. Finding of Facts

The following facts are taken from the briefs and the witness testimony at the evidentiary hearing. Detective Donald Perry testified for the prosecution, and two witnesses, Dustin Lee Redmond (a neighbor who observed the events) and Freddie Floyd Parton (the backseat passenger in the stopped vehicle), testified for the defense. The affidavit of a fourth individual, Dean Clark, was placed in the record by avowal. See Hearing Exhibit #8.

On January 28, 2004, at 11:30 p.m., Detective (now Trooper) Donald Perry and KSP Trooper Mike Taylor were driving together in a marked police cruiser on Long Branch Road in Arjay, Kentucky. Long Branch Road is a narrow rural road with no marked centerline. Det. Perry testified that they were investigating an unsolved drug-related homicide and that Trooper Taylor had driven him by the separate houses of three known drug dealers in the area, including the home of George Patrick. Det. Perry testified that they saw a car approaching on the "wrong" side of the road and that the car then pulled abruptly to the right and stopped. Det. Perry testified that they suspected that the driver was impaired. The officers stopped the police cruiser "nose-to-nose" with the observed vehicle and

1

activated the cruiser's blue lights. Although it was dark, the officers could see three male occupants in the car. When the officers approached the stopped vehicle, they asked for the individuals' names. According to Det. Perry, the front passenger had his hands in his jacket pockets.

Trooper Taylor ordered the front passenger (George Patrick) to show his hands, but Patrick refused several times. Defense witness Freddy Parton testified that he heard the officer request George Patrick to take his hands out of his pockets. Det. Perry testified that George Patrick and the driver of the vehicle both appeared to be somewhat under the influence of some substance, although he further testified that Patrick was "not manifestly intoxicated". Trooper Taylor opened the passenger door and ordered Patrick from the vehicle. Patrick stated his name and got out of the vehicle, but did not remove one hand from the right pocket. Det. Perry recognized the name "George Patrick" as the name of a convicted drug dealer. Det. Perry testified that he then pulled Patrick's right hand out of the jacket pocket because he believed the suspect might have a firearm there. Det. Perry testified that he did not conduct a pat-down of Patrick, but rather, immediately reached into Patrick's pocket, where he discovered a bag containing 170 illegal pills. Patrick was arrested for "Trafficking in a Controlled Substance". The driver of the vehicle was charged with "DUI".

## II. Issues Presented

The defendant argues that 1) the officers lacked "reasonable suspicion" to stop the vehicle in which he was riding as a passenger, and 2) the officers had no reason to further detain Patrick and search his pocket without a pat-down. The defendant asserts that the evidence of the pills retrieved from his pocket by the officer must therefore be suppressed. The United States argues that the officers properly stopped the vehicle and that the officer's brief protective "search" of defendant's pocket was reasonable under the Fourth Amendment.

## III. Conclusions of Law

### Whether the Stop of the Vehicle Violated the Fourth Amendment

"The Fourth Amendment prohibits 'unreasonable searches and seizure' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002). A police officer may lawfully stop a

motorist if the officer has probable cause to believe the motorist has committed a traffic violation. *United States v. Freeman*, 209 F.3d 464, 466 (6th Cir. 2000). A police officer may also stop and briefly "detain an individual, question him, and perform a limited frisk for weapons if the officer reasonably suspects the individual of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Chapman*, 305 F.3d 530 (6th Cir. 2002). The stop of a motorist reasonably suspected of criminal activity is "analogous to a *Terry* stop." *United States v. Palomino,* 100 F.3d 446, 449 (6th Cir. 1996). Reasonable suspicion is based on the totality of the circumstances and has been defined as requiring "articulable reasons" and "a particularized and objective basis for suspecting the particular person ... of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417-18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *United States v. Hensley,* 469 U.S. 221, 227-29, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985).

     In the present case, the officers observed a vehicle on the "wrong" side of the road and watched it pull over abruptly and stop. Given these observations, the officers reasonably suspected that the observed motorist was driving while impaired. See *Terry*, 392 U.S. at 19-20 (discussing requirement of officer's reasonable suspicion of criminal activity in order to "stop" an individual). Thus, the officers lawfully stopped the vehicle in which defendant was a passenger. The defendant contends that Long Branch Road is a one-lane road with no "wrong" side and that the driver merely pulled over to let the cruiser pass on a narrow road. Although the testimony and the photographs reflect that the roadway is narrow and does not contain a marked centerline, Kentucky law expressly provides that all vehicles on any highway "shall travel upon the right side of the highway whenever possible...." K.R.S. §189.300. It further provides that meeting vehicles "shall pass each other from the right, each giving to the other one-half (½) of the highway as nearly as possible." K.R.S. §189.310(2). The Magistrate Judge will fully credit the officer's testimony that the observed vehicle was initially observed driving on the wrong side of the road.

     Hence, the officers observed the driver violate K.R.S. §189.300, and additionally formed the impression that the driver might be impaired when he suddenly pulled to the right and came to a complete stop. The testimony at the hearing (including the testimony of defense witness Dustin Redmond) indicated that the driver pulled over approximately 50-60 yards beyond the bridge going toward Patrick's house. The driver did not pull over immediately after the bridge in a "pullover" area to let the cruiser pass, but rather, pulled over abruptly further up the road. These observations gave the officers an adequate basis to stop the

vehicle to investigate further. See *Bennett v. City of Eastpointe*, 410 F.3d 810, 833-834 (6th Cir. 2005)(discussing reasonable suspicion for a vehicle stop).

**Whether the Search of Defendant's Pocket Prior to a Pat-Down was Lawful**

Upon stopping the vehicle in the present case, the officers were quickly confronted with a serious issue of officer safety when Mr. Patrick refused to comply with Trooper Taylor's order to "show me your hands". This refusal occurred both when Patrick was seated in the front passenger seat and continued after he exited the vehicle. Upon hearing his name, the officers recognized that Patrick was a convicted drug dealer, which heightened their concern. After Patrick was ordered out of the vehicle, Det. Perry testified that he forcibly removed Patrick's hand from the right jacket pocket and immediately inserted his own hand. Although he states that he expected to retrieve a firearm, he discovered a bag of pills, which he confiscated. Det. Perry candidly acknowledged at the hearing that he did not conduct a pat-down of Patrick's outer clothing to feel for a weapon before reaching inside the defendant's pocket.

During the course of a protective pat-down, "if the officer immediately detects nonthreatening contraband on the suspect's person, he may seize it." *Minnesota v. Dickerson*, 508 U.S. 366, 373, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); *United States v. Hudson*, 405 F.3d 425, 431-432 (6th Cir. 2005). However, in the present case, the defendant points out that the detective did not conduct a "pat-down" within the carefully drawn parameters of *Terry*. The detective skipped that procedure and immediately reached inside the defendant's pocket. In other words, the officer did not first feel for the presence of a firearm.

In *Terry*, 392 U.S. at 24, 88 S.Ct. at 1881, the United States Supreme Court held that:

> "[W]e cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest. When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in

4

fact carrying a weapon and to neutralize the threat of physical harm."

The United States Supreme Court further explained that:

> "Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883

The method approved by the United States Supreme Court in *Terry* is for the officer in such situations to conduct a pat-down of the suspect's outer clothing to feel for the presence of a weapon. Consistent with this holding, the Sixth Circuit Court of Appeals has explained that "where a police officer reasonably suspects 'that the persons with whom he is dealing may be armed and presently dangerous ... he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons...." *Hudson*, 405 F.3d at 431-432, citing *Terry,* 392 U.S. at 30, 88 S.Ct. 1868.

In *Terry*, the officer patted down the outer clothing of the suspect. The United States Supreme Court emphasized that the officer "did not place his hands in their pockets or under the outer surface of their garments until he had felt weapons". *Id.*, 392 U.S. at 29, 88 S.Ct. at 1884. Only after feeling the weapon during the pat-down did the officer in *Terry* properly reach for and remove the suspect's firearm. The United States Supreme Court emphasized that the officer "confined his search strictly to what was minimally necessary to learn whether the men were armed and to disarm them once he discovered the weapons" and expressly noted that he "did not conduct a general exploratory search for whatever evidence of criminal activity he might find" on defendant's person. *Id.*

"A search for weapons in the absence of probable cause to arrest, however, must, like any other search, be strictly circumscribed by the exigencies which

5

justify its initiation." *Terry*, 392 U.S. at 25-26, 88 S.Ct. at 1882, citing *Warden v. Hayden*, 387 U.S. 294, 310, 87 S.Ct. 1642, 1652, 18 L.Ed.2d 782 (1967). "Thus it must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby, and may realistically be characterized as something less than a 'full' search, even though it remains a serious intrusion." *Id.* at 25-26. "The sole justification of the search in the present situation is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Id.*, 392 U.S. at 29, 88 S.Ct. at 1884.

In *United States v. Lane*, 909 F.2d 895, 900 (6th Cir. 1990), *cert. denied*, 498 U.S. 1093 (1991), the Sixth Circuit Court of Appeals explained that "[i]ncident to a valid *Terry* stop, an officer may frisk the suspect for weapons if the officer reasonably believes that the suspect is armed and dangerous." Citing *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). In *Lane*, the officer properly conducted a pat-down "frisk" of the suspect's outer clothing after the suspect twice attempted to reach into his coat pocket. See also, *United States v. Bohannon*, 225 F.3d 615, 618 (6th Cir. 2000)(upholding pat-down after suspect twice ignored the officer's order that he keep his hands out of his pockets and holding that "it was reasonable and prudent for the agent to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him"), quoting *Terry,* at 30, 88 S.Ct. 1868.

However, in the present case, the detective candidly admitted that he did *not* conduct a pat-down of the suspect before reaching into the pocket. The following testimony was elicited at the evidentiary hearing held on July 10, 2006:

> Mr. Gordon: There is no question that you searched his pocket?
>
> Det. Perry: Yeah, to see if there was a weapon or something like that in there.
>
> Mr. Gordon: Yeah, yeah, you didn't pat him down did you?
>
> Det. Perry: No.
>
> Mr. Gordon: No, you know what a pat down is, don't you?

Det. Perry: Yes sir.

Mr. Gordon: A pat down is you just go like this to see if there is a weapon or something in it right?

Det. Perry: Yes sir.

Mr. Gordon: You were more intrusive than that weren't you?

Det. Perry: I felt there was a good possibility that there was a weapon in his pocket. I wanted to make sure that I was safe.

Mr. Gordon: OK, but you were more intrusive than that right?

Det. Perry: Sure.

Although Det. Perry was certainly justified in believing that the suspect may have been armed, the very purpose of a "pat down" authorized by *Terry* is to enable the officer to ensure his own safety by feeling for a weapon on a suspect. The United States Supreme Court in *Terry* characterized this authority as "narrowly drawn". If Det. Perry had conducted a "pat down", he would have quickly realized there was *not* a firearm in the defendant's pocket. Alternatively, he might have felt an object in the jacket pocket and then justifiably reached into the pocket to determine if it was a weapon. However, he was not free to skip this process and simply reach into the suspect's pocket, particularly in the absence of any actual exigency, such as violent behavior.[1] Thus, although the officer had genuine concerns for his safety, he went beyond the constitutionally permissible bounds of the Fourth Amendment, as set forth by the United States Supreme Court in *Terry*. In light of the binding Supreme Court precedent on this very subject, the defendant is entitled to suppression of the pills retrieved from his jacket pocket.

---

[1] As summarized in 79 Corpus Juris Secundum, Searches §89: "An officer may pat down a person's outer clothing, and, upon feeling a weapon, may reach for and remove the weapon, but generally may not thrust his hands into a person's pockets without an initial limited exploration for arms."

## RECOMMENDATION

It is **RECOMMENDED** that the "Motion to Suppress" (DE#27) by the defendant be **GRANTED**.

By the express agreement of the parties, particularized objections to this Report and Recommendation must be filed within three (3) days of the date of service of the same or further appeal is waived. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *affirmed*, 474 U.S. 140 (1985). Poorly drafted objections, general objections or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. See *Howard v. Secretary of Health and Human Services*, 932 F.2d 505 (6th Cir. 1991). Also by agreement, a party may file a response to another party's objection within three (3) days after being served with a copy thereof. Rule 72(b), Fed. R.Civ.P.

This the 13th day of July, 2006.



Signed By:
J. B. Johnson, Jr.
United States Magistrate Judge