UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

UNITED STATES OF AMERICA,       )
                                )
        Plaintiff,              )        Criminal Action No. 6: 06-34-DCR
                                )
V.                              )
                                )
GEORGE EDWARD PATRICK,          )        **MEMORANDUM OPINION**
                                )        **AND ORDER**
        Defendant.              )

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant George Edward Patrick's motion to suppress. [Record No. 28] Having reviewed this motion along with the Magistrate Judge's Report and Recommendation, the Court concludes that the motion should be denied because the officers had reasonable suspicion to stop the vehicle in which Patrick was traveling. Further, they were justified in searching Patrick's jacket pocket under the circumstances presented to them.

**ANALYSIS**

Defendant Patrick filed a motion to suppress all evidence seized on January 28, 2004, on June 22, 2006. [Record No. 27] Consistent with local practice, the motion was referred to United States Magistrate Judge J.B. Johnson Jr. for consideration pursuant to 28 U.S.C. § 636(b)(1)(B). On the first issue presented, the Magistrate Judge concluded that the officers had reasonable suspicion to stop the vehicle in which Patrick was traveling after observing a violation of Kentucky Revised Statute §189.300 and behavior which might indicate that the

-1-

driver was impaired.  As neither party has objected to this specific finding, the Court will adopt

if by reference and incorporate it herein. [Record No. 40]  Although this Court must make a *de

novo* determination of those portions of the Magistrate Judge's proposed findings of fact and

recommendations to which objection is made, 28 U.S.C. § 636(b)(1)(c), "[i]t does not appear that

Congress intended to require district court review of a magistrate's factual or legal conclusions,

under a *de novo* or any other standard, when neither party objects to those findings."  *Thomas

v. Arn*, 474 U.S. 140, 150 (1985).

      However, as to the second issue, the Magistrate Judge recommended that the drugs which

were seized from Patrick as a result of the search of his pocket be suppressed, finding that

Detective Perry's search did not comply with the requirements of *Terry v. Ohio*, 392 U.S. 1

(1968).  For the reasons that follow, the Court rejects this portion of the Report and

Recommendation.  And as a result, the Court will deny Patrick's motion to suppress.  [Record

No. 27]

      Without restating all of the Magistrate Judge's findings to which neither party has

specifically objected, the timeline of events is sufficiently important to merit further discussion.

While investigating a drug-related homicide, Trooper Mike Taylor of the Kentucky State Police

and Detective Donald Perry were driving a marked police cruiser by the houses of known drug

dealers.  After observing a car driving on the "wrong" side of the road (which then pulled

abruptly to the side of the road), the officers pulled in "nose-to-nose" with the vehicle.  Having

effected a stop of the vehicle, the officers approached the three occupants they observed in the

car.  Because it was late at night (11:30 p.m.) and dark, Trooper Taylor ordered everyone in the

vehicle to show their hands.  It appears that the driver and the person in the back seat complied, but Patrick (who at least Detective Perry did not yet recognize) did not, despite repeated commands by Trooper Taylor.  One of the officers then ordered Patrick out of the car.  While exiting the vehicle, Patrick identified himself as "George Patrick", a name known to the officers as that of a drug dealer.  After exiting the vehicle, Patrick continued to refuse to remove his right hand from his pocket as ordered.  Detective Perry then approached Patrick, and as Trooper Taylor forcibly removed Patrick's hand from his pocket, Detective Perry placed his hand into the pocket to check the contents.  He did so because he felt there was "a good possibility there was a weapon in his pocket."  [Ex. 47, pg. 27-28]

The Fourth Amendment does not "forbid[] all searches and seizures, but [only] unreasonable searches and seizures."  *Elkins v. United States*, 364 U.S. 206, 222 (1960).  Generally, searches conducted without a warrant are per se unreasonable.  *Mincey v. Arizona*, 437 U.S. 385 (1978).  However, the Court has recognized certain categories of exceptions to this general rule, including consent searches, searches incident to an arrest, searches concomitant to the 'hot pursuit' of a felon, and searches to prevent the imminent destruction or removal of evidence.  *See e.g. Schneckloth v. Bustamonte*, 412 U.S. 218 (1973) (consent searches); *Chimel v. California*, 395 U. S. 752 (1969) (search incident to arrest); *Warden v. Hayden*, 387 U.S. 294 (1967) (hot pursuit); *Schmerber v. California*, 384 U.S. 757 (1966) (prevent the imminent destruction or removal of evidence).  Although these searches are performed without a warrant, they are not per se unreasonable so long as the officer has probable cause to conduct the search

plus the existence of some exigent circumstance.  *See e.g. Brigham City v. Stuart*, __ U.S. __, 126 S. Ct. 1943 (2006).

Prior to 1968, judges deciding whether to suppress evidence engaged in a two-part inquiry.  First, if the officers had obtained a valid warrant which properly described the place to be searched and the things to be seized, the search would almost always be upheld as reasonable.[1]   If the search occurred without a warrant, the government would have to demonstrate the existence of exigent circumstances or have the evidence excluded at trial.  *See Bustamante, et al, supra*.  However, in 1968 the Supreme Court recognized "an entire rubric of police conduct – necessarily swift action predicated upon the on-the-spot observations of the officer on the beat – which historically has not been, and as a practical matter could not be, subjected to the warrant procedure."  *Terry v. Ohio*, 392 U.S. 1, 20 (1968).  In these cases, the officers actions would instead "be tested by the Fourth Amendment's general proscription against unreasonable searches and seizures."  *Id.*

Although the Supreme Court stated that "the notions which underlie both the warrant procedure and the requirement of probable cause remain fully relevant in this context," it proceeded to announce an entirely new standard against which the officer's rationale for acting would be judged: "reasonable suspicion".[2]   And although the search which was performed in *Terry* was a pat-down of the clothing of the suspect, the Court announced that the proper test was

---

[1]     Even where the warrant was later found invalid, if the officers acted "in good faith" the search would normally be upheld.  *United States v. Leon*, 468 U.S. 897 (1984).  The evidence might also be admissible under the "inevitable discovery" doctrine.  *United States v. Haddix*, 239 F.3d 766, 768 (6th Cir. 2001).

[2]     In *Terry*, the Court defined the standard as "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."  *Id.* at 27.

to "balanc[e] the need to search [or seize] against the invasion which the search [or seizure] entails." *Id.* at 21. The search must be "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby, and may realistically be characterized as something less than a 'full' search." *Id.* at 26. While this search is usually accomplished by a pat-down or "frisk", the balancing test required by *Terry* is not so narrowly limited. *See Adams v. Williams*, 407 U.S. 143, 146 (1972)*, infra*.

"When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or others, he may conduct a limited protective search for concealed weapons." *Adams*, 407 U.S. at 146. In *Adams*, the officer, Sergent Connolly, received a tip from an informant that a suspect in a nearby car, Robert Williams, was in possession of narcotics and had a gun at his waist. Connolly approached the vehicle and asked Williams to step out of the car. Instead, Williams rolled down his window. The officer then reached inside the window and removed a fully loaded revolver from Williams' waistband, although the firearm was not visible to Connolly at the time he reached into the vehicle. Connolly did not conduct a frisk or pat-down before removing the firearm from Williams' waistband. *Id.*

The Supreme Court upheld the search, finding that "[u]nder the circumstances the policeman's action in reaching to the spot where the gun was thought to be hidden constituted a limited intrusion designed to insure his safety, and we conclude that it was reasonable." *Adams*, 407 U.S. at 148, *citing Terry*, 392 U.S. at 30. In the present case, the search Detective Perry conducted was similarly reasonable. The officers had reasonable suspicion to stop the

vehicle (which they did in a marked cruiser) and announced their identity.  When asked to identify himself and remove his hands from his pockets, Patrick refused.  Even after identifying himself with the name of a known drug dealer[3] and exiting the car, Patrick continued to refuse to remove his right hand from his pocket.

"When an individual responds to the approach of identified law enforcement with 'deliberately furtive actions,' the furtive actions, 'when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime . . . are proper factors to be considered[.]" *United States v. Romero*,__ F.3d __, 2006 U.S. App. LEXIS 16448, *18 (6th Cir. 2006).[4]  And although the 6th Circuit identified these as factor used in evaluating probable cause to arrest the suspect, they are equally applicable as factors which could give rise to reasonable suspicion.  *United States v. West*, 219 F.3d 1171, 1179 (10th Cir. 2000); *see also United States v. Garza*, 921 F.2d 59 (5th Cir. 1991)[5].

Here, Detective Perry's search was limited to the place he believed Patrick was hiding a firearm.[6]  Given Patrick's continued refusal to remove his hand, complying only when Trooper

---

3       The Fourth Circuit has held that "[t]he indisputable nexus between drugs and guns presumptively creates a reasonable suspicion of danger to the officer.  *United States v. Sakyi*, 160 F.3d 164, 169 (4th Cir. 1998).  In *Sakyi*, the fact that the officer discovered marijuana in the car was by itself sufficient for reasonable suspicion and created a presumptively reasonable *Terry* search.  Here, the officers' knowledge of Patrick's prior criminal involvement, standing alone, would not create the same presumption.  It would, however, be a factor in forming reasonable suspicion that Patrick might be armed.

4       Santiago's "furtive actions" included "refusing to show his hands to the officers".  *Id*.; *see also United States v. Knox*, 950 F.2d 516 (8th Cir. 1991).

5       In *Garza*, the police officer's frisk of defendant was justified based on defendant's moving as if he was trying to conceal something and on officer's knowledge of his past criminal activity.

6       This suspicion was justified by Patrick's continued refusal to remove his hand from that pocket, even after he removed his other hand from the opposite jacket pocket.

Taylor used some amount of force, Detective Perry's immediate placing of his hand in the pocket which Patrick had just vacated "constituted a limited intrusion designed to insure his safety." *Adams*, 407 U.S. at 148.  Once Perry felt the objects in Patrick's pocket during his search for a weapon, the officers could seize it as contraband.  *Minnesota v. Dickerson*, 508 U.S. 366 (1993); *Guzman v. Estelle*, 493 F.2d 532, 536 (5th Cir. 1974) ("A search for narcotics may be justified where an officer's search for weapons unexpectedly produces evidence providing or contributing to probable cause to believe that a person possesses narcotics.").  "Where the contour of the object makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons." *Dickerson*, 508 U.S. at 375.  While Detective Perry's initial search was for a weapon, once he felt the shape of the pills, their approximate number, and the absence of any prescription bottle, he was justified in removing them from Patrick's pocket.

Under the facts presented, it simply cannot be concluded that the officer's limited actions in checking the contents of one pocket of a known drug dealer who refuses to comply with instructions is "more intrusive" than a full body pat-down which includes contacts with the inner thigh and groin or the search of the entire interior of the car, both of which are authorized under *Terry*.  *Michigan v. Long*, 463 U.S. 1032 (1983).  The record in this case amply demonstrates that the officers' legitimate concern for their own safety more than justified the limited intrusion that occurred.  And even if the Court were to hold the search invalid, exclusion of evidence would not be appropriate in this specific instance, as an officer's well–founded concern for his own safety would negate any deterrent effect the rule might have.  *United States v. Bell*, 762 F.2d

495, 498, fn. 1 (6th Cir. 1985) (Where an officer "acted in good faith concern for his safety and that of his fellow officers and bystanders, [] suppression [] is unlikely to have a deterrent effect in similar situations in the future, since officers [] are much more likely to risk losing a case than a life. This view of the matter is noteworthy given the Supreme Court's perception that if . . . the exclusionary rule does not result in appreciable deterrence, then, clearly, its use in the instant situation is unwarranted."); citing *United States v. Leon*, 468 U.S. 897 (1984).

### CONCLUSION

For the reasons discussed herein, it is **ORDERED** as follows:

(1)    The Magistrate Judge's Report and Recommendation [Record No. 45] is **ADOPTED** in part and **REJECTED** in part;

(2)    The Defendant's motion to suppress is **DENIED**.  [Record No. 27]

This 19th day of July, 2006.



Signed By:
*Danny C. Reeves*
United States District Judge