Eastern District of Kentucky
**FILED**
FEB 24 2021
AT LONDON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> V. ) <br> ) <br> GEORGE EDWARD PATRICK, ) <br> ) <br> Defendant. ) | Criminal Action No. 6: 06-034-DCR <br><br> **MEMORANDUM OPINION AND ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of alleged violations of the conditions of supervised release committed by Defendant George Patrick. Patrick initially appeared before United States Magistrate Judge Hanly A. Ingram on January 28, 2021. At that time, counsel for the defendant indicated that Patrick's Criminal History Category ("CHC") should be II for purposes of the alleged supervised release violations, as opposed to VI as applied during the original sentencing hearing. [Record No. 105] However, as discussed more fully below, the validity of Patrick's underlying sentence has not been disturbed and CHC VI remains the applicable CHC for purposes of calculating the defendant's non-binding guideline range when considering his alleged violations of the conditions of supervised release imposed at the time the defendant was originally sentenced.

**I.**

Patrick pleaded guilty on September 19, 2006, to being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1). Pursuant to a written plea agreement, the parties agreed that Patrick should be sentenced as an Armed Career Criminal under 18 U.S.C. §

924(e)(1) ("ACCA"). [Record Nos. 66, 70] The parties did not agree on a specific CHC in the plea agreement.

The presentence investigation report ("PSR") prepared subsequently by the probation officer provided that Patrick was an Armed Career Criminal within the meaning of U.S.S.G. § 4B1.4(c)(2). This designation resulted in CHC VI being assigned in calculating Patrick's guideline range.[1] Patrick did not object to that aspect of the PSR. On March 19, 2007, he was sentenced to 199 months' imprisonment to be followed by five years of supervised release. [Record No. 73] Patrick waived the right to appeal as well as the right to collaterally attack his guilty plea and conviction. [Record No. 66]

Notwithstanding the waiver provision of his plea agreement, on June 30, 2014, Patrick filed a *pro se* motion to vacate his sentence pursuant to 28 U.S.C. § 2255. [Record No. 81] In support, Patrick argued that he was no longer an Armed Career Criminal under the decision in *Descamps v. United States*, 570 U.S. 254 (2013). However, the motion was denied because *Descamps* did not create a new rule of constitutional law that was retroactively applicable on collateral review and because Patrick's § 2255 motion was time-barred. [Record No. 82] The United States Court of Appeals for the Sixth Circuit denied Patrick's later request to file a second or successive motion under § 2255. [Record No. 100]

Next, in July 2018, Patrick filed a petition under 28 U.S.C. § 2241. Patrick argued in that petition that he was actually and factually innocent of the ACCA enhancement because he did not have three prior convictions that constitute serious drug offenses and/or violent felonies. [Lexington Civil Action 5: 18-445-DCR] To further evaluate his claim in the civil

---

[1] The 2006 edition of the Guidelines Manual was used calculate Patrick's guideline range.

action filed under § 2241, the Court directed the United States Probation Office to prepare a report to "identify any Armed Career Criminal Act predicate offenses." The report indicated that Patrick would have only one qualifying ACCA conviction if sentenced at the time of that report. However, the Court ultimately determined that § 2241 was not the proper mechanism to bring this challenge, as it "could have been remedied through objections at sentencing, on appeal, or through a timely § 2255." [5: 18-CV-445, Record No. 29] The Sixth Circuit also affirmed this decision. *Patrick v. Warden, FMC Lexington*, 2020 WL 2611190 (6th Cir. May 15, 2020).

Patrick was released from incarceration to commence his five-year term of supervised release on June 11, 2020. He is now before the Court based on alleged violations of the conditions of supervised release, the most serious of which is a Grade B violation. Considered in conjunction with his original CHC of VI, the non-binding guidelines range of imprisonment is 21 to 27 months. *See* U.S.S.G. § 7B1.4. However, the report prepared by the probation office to assist the Court as part of the § 2241 proceeding would assign a CHC of II. If this CHC were applied, the non-binding range for incarceration upon revocation would be 6 to 12 months. *See id.*

## II.

The Court begins by examining the relevant guidelines language to determine the appropriate CHC applied in criminal matters involving violations of supervised release. The Introduction to Chapter Seven of the guidelines manual provides: "The grade of the violation, together with the violator's criminal history category calculated *at the time of the initial sentencing*, fix the applicable sentencing range." U.S.S.G. Ch. 7 Pt. A 4. (emphasis added).

Next, the application notes to section 7B1.4 state:

> [t]he criminal history category to be used in determining the applicable range of imprisonment in the Revocation Table is the category determined at the time the defendant originally was sentenced to the term of supervision. The criminal history category is not to be recalculated because the ranges set forth in the Revocation Table have been designed to take into account that the defendant violated supervision.

U.S.S.G. § 7B1.4, cmt. n.1. *See also United States v. Webb*, 30 F.3d 687, 688-89 (6th Cir. 1994) (observing that the sentencing court must consider the "non-binding policy statement" contained in Chapter Seven of the guidelines).

The Sixth Circuit has interpreted the policy statement consistent with its plain language. In *United States v. Wright*, 2 F.3d 175 (6th Cir. 1993), the defendant was convicted of threatening the lives of various federal officials, including President Ronald Reagan. The presentence report calculated the defendant's CHC as V, but the parties negotiated a plea agreement that included a CHC of IV. Wright was sentenced to 30 months' imprisonment (plus a term of supervised release) consistent with the parties' plea agreement. When Wright later violated the terms of his supervised release, the sentencing judge relied on a CHC of V in determining the appropriate sentence.

Wright argued that the judge impermissibly recalculated his CHC by failing to apply CHC IV. The Sixth Circuit disagreed, observing that the district court acknowledged at the initial sentencing hearing that V was the defendant's actual CHC. The district court could have, but was not required to, give the defendant the same benefit of the doubt he received at the original sentencing. *Id.* at 178.

A group of cases from the Eleventh Circuit sheds additional light on this issue. Levore Jones-Tidwell pleaded guilty to firearm and controlled substance charges. *United States v. Jones-Tidwell*, 610 F. App'x 890 (11th Cir. 2015). The district court used the 2008 edition of

the Sentencing Guidelines Manual to determine that he had 10 criminal history points, which included one recency point because Jones-Tidwell committed the offenses of conviction less than two years after he had been released from imprisonment. Accordingly, his CHC was V. He was sentenced to 42 months' imprisonment and three years of supervised release.

Jones-Tidwell was released and began serving his term of supervised release. In 2014, he violated the conditions and the district court calculated his advisory guidelines range based on a CHC of V. He argued that the calculation was erroneous because the Sentencing Commission had eliminated consideration of recency points in 2010. And without the recency point, he would only have a CHC of IV.

The Eleventh Circuit rejected Jones-Tidwell's argument because the sentencing guidelines specifically instruct that "'[t]he criminal history category is not to be recalculated' for purposes of imposing a revocation sentence." *Id.* at 891-92 (quoting U.S.S.G. § 7B1.4 cmt. n.1). The sentencing court had done exactly as the guidelines instruct: "It used the criminal history category 'applicable at the time [Jones-Tidwell] was originally sentenced to a term of supervision.'" The guidelines amendment regarding recency points was prospective, so the Eleventh Circuit was not faced with the possible effect a retroactive change in the law might have on a defendant's CHC. *See id.* at 891.

Two other cases come closer to addressing the issue presently before this Court. In *United States v. Singleton*, 580 F. App'x 833 (11th Cir. 2014), the defendant argued that "based on changes in the law since his original sentencing date," the district court should have considered whether his CHC overrepresented his criminal history. Although the Eleventh Circuit did not identify which changes in the law Singleton cited in support of his argument, it

explained that the district court was without authority to rely on such changes to depart from the CHC applied at the original sentencing. *Id.* at 835.

Next, in *United States v. Esteen*, 703 F. App'x 825 (11th Cir. 2017), the defendant challenged his 40-month sentence imposed upon revocation of supervised release as procedurally and substantively unreasonable. The court affirmed Esteen's sentence, stating in a footnote,

> [t]o the extent Mr. Esteen argues that the district court erred by relying on a criminal history category of IV instead of II or III, any intervening changes to the way criminal history points are calculated do not affect his guidelines range upon revocation of supervised release, which is calculated using the criminal history category applicable at the time of the initial sentencing.

*Esteen*, 703 F. App'x at 830 n.3.

Similarly, the court rejected a defendant's argument that his CHC was incorrectly calculated at his original sentencing. *United States v. Chisolm*, 559 F. App'x 800 (11th Cir. 2014). The Eleventh Circuit concluded that the district court imposing a sentence upon revocation correctly applied the original CHC regardless of the alleged mistake. In other words, it would have been inappropriate to entertain such an allegation of error during revocation proceedings.

Relying on *United States v. Almand*, 992 F.2d 316, 317 (11th Cir. 1993), the *Jones-Tidwell, Singleton,* and *Chisolm* Courts observed that a defendant may not challenge the validity of an underlying sentence during revocation proceedings. In *Almand*, the defendant argued that he could not be sentenced following revocation of supervised release because he had not been present when his underlying sentence was imposed. The court held that arguments challenging the validity of the underlying sentence could be raised by collateral

attack only through a separate proceeding. And unless the underlying sentence has been vacated, the court should presume it is valid during the revocation proceeding. *Id.*

As explained above, Patrick's collateral attacks have been unsuccessful. *But see Lewis v. United* States, 2017 WL 4799808 (S.D. W.Va. Oct. 24, 2017) (new lower CHC was applied during revocation proceeding when defendant had successfully challenged ACCA designation under § 2255). And because the defendant's underlying sentence has not been vacated, there is no basis for applying any CHC other than VI as applied during the original sentencing hearing. Accordingly, it is hereby

**ORDERED** that the defendant's objection to the application of CHC VI is **OVERRULED**.

Dated: February 24, 2021.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky